IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**JANET L. THOMPSON,**

      **Plaintiff,**

v.                                     Case No. 2:12-cv-01945

**CITY OF CHARLESTON, WEST VIRGINIA,**
**a political subdivision,**
**THE CITY OF CHARLESTON, WEST VIRGINIA**
**CITY COUNCIL MEMBERS,**
**Individually and in their official capacities as**
**Agent and Employees of the City of**
**Charleston, West Virginia,**
**JAMES M. REISHMAN, Individually and**
**in his official capacity as the Clerk for the**
**City of Charleston, West Virginia,**
**NATALIE TENANT, Individually,**
**TIM LEACH, Individually,**
**PAUL ELLIS, Individually and in his**
**official capacity as Agent and Employee**
**of the City of Charleston, West Virginia,**

      **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

The plaintiff's Amended Complaint (ECF No. 22, as supplemented by ECF No. 51), includes allegations that she was illegally denied her right to run as an Independent candidate in the City of Charleston's 2011 municipal election, and that the election and the canvass of election results were improperly conducted. The Amended Complaint seeks compensatory damages, punitive damages, a declaratory judgment that the defendants have violated West Virginia election laws and the plaintiff's civil rights, and an injunction prohibiting the defendants from continuing to violate West Virginia

election laws. Pending before the court is the Motion to Dismiss filed by the City of Charleston defendants (City of Charleston, Charleston City Council Members, City Clerk James Reishman and City Attorney Paul Ellis, ECF No. 43), which is supported by a memorandum (ECF No. 44).[1] The plaintiff filed a response in opposition with exhibits (ECF No. 68), and the Charleston defendants filed a reply (ECF No. 74). By Order entered July 31, 2012 (ECF No. 49), the court applied Fed. R. Civ. P. 12(d), and provided a *Roseboro*[2] notice to the plaintiff.

## Factual Background

It appears from the allegations in the Amended Complaint, various exhibits, the statement of facts in the Charleston defendants' memorandum, and unsworn statements made at a status conference conducted by this judicial officer on June 28, 2012, that the filing period for the 2011 Charleston municipal elections opened in December, 2010. When the plaintiff filed to run for mayor as an Independent, the Secretary of State's Elections Division informed her that she was ineligible to run as an Independent because such a filing must have been completed by August 1, 2010. The plaintiff changed her party affiliation to Democrat and filed for the office of mayor. Upon learning of the inconsistency between the time for filing as an Independent and the time for filing as a candidate for a municipal election, the filing period for Independents was re-opened, but the plaintiff did not re-file as an Independent (although a candidate for City Council did file as an Independent). No other candidate filed as a Democrat for the office of mayor, and the plaintiff won the uncontested Democratic primary.

---

[1] Charleston defendant Rod Blackstone was voluntarily dismissed by the plaintiff (ECF No. 63), and an Order was entered to that effect. (ECF No. 77).
[2] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

The general election was held on May 17, 2011; the incumbent mayor was re-elected and the plaintiff received 29.21% of the vote. The plaintiff disputes the manner in which the general election was conducted. In addition to complaining about her inability to register as an Independent, she contends that it was error for the election officials not to use M100 voting machines, not to use poll books during early voting, and not to give notice of changes in voting procedures. She may claim that the canvass was improperly conducted. The plaintiff makes various conclusory allegations that the method of conducting the election violated her civil rights.

## Procedural Background

On May 25, 2011, the results of the election were certified. (ECF No. 43-1.)

On June 3, 2011, the plaintiff filed a verified Notice of Election Contest in which she stated the following grounds:

1. Violation of West Virginia election laws
    A. Kanawha County election officials allowed certain persons to manipulate the electronic voting system
    B. Kanawha County election officials allowed certain persons to have the keys to a secure room where voting supplies were kept
2. Electoral irregularities
    Charleston uses Kanawha County's electronic voting system, which is the ballot-marking system, comprising the ES&S M100 Optical Scanner and the ES&S 650 Tabulator System
    A. The M100 Optical Scanners were not at polling places, thereby converting the electronic voting system to an unauthorized paper ballot system
    B. The failure to have the M100 Optical Scanners meant that the votes could not be integrated and verified with the Tabulator
    C. Certain persons had the keys to a secure room where the voting supplies were kept so that it is possible that tampering occurred
3. Fairness of election in question
    Election officials failed to comply with election laws, thereby changing or muddying the results
    There is no "reasonable certainty" that the results are correct
    The election officials who decided not to use the M100 Optical Scanner committed electoral fraud
    The plaintiff's due process and equal protection rights were violated. (ECF No. 43-2.)

3

In other words, the plaintiff did not contest individual ballots; she challenged the conduct of the entire municipal election, including the early voting.

On June 10, 2011, the plaintiff supplemented her grounds for a contest of the election by adding the words set forth in brackets below to the allegations listed above:

1.  Violation of West Virginia election laws
     A.  Kanawha County [and Charleston] election officials . . .
     B.  Kanawha County [and Charleston] election officials . . .
2.  Electoral irregularities
     A.   The M100 Optical Scanners [and the Automark ADA compliant machine] were not at polling places [including the early voting process] . . .
     B.   The failure to have the M100 Optical Scanners [and the Automark ADA compliant machine] [for voting, including early voting] . . .
3.  Fairness of election in question
     [There were unqualified persons on the ballot (*i.e.,* several candidates filed for candidacy after the filing period ended)
     The ballot failed to have the terms of office listed
     Unqualified voters – outside of precinct voting lists
     The municipal election filing period denied Independent candidates equal access.]  (ECF No. 43-3.)

On June 15, 2011, the plaintiff filed a Petition for Default Judgment in the Circuit Court of Kanawha County, Case No. 11-MISC-282, in which she named "Charleston City Council, et al.," as respondents.  (ECF No. 43-4.)  She served the Petition on Mayor Danny Jones, the Kanawha County Clerk and the Charleston City Clerk.  (*Id.*, at 2.)  The basis for the default was that the plaintiff alleged that she had not received a response to her Notice of Election Contest.  (*Id.*, at 1.)  That same day, the plaintiff filed an Amended Petition for Default Judgment in which she added two respondents, Charleston City Clerk and Kanawha County Clerk.  (ECF No. 43-5.)

On June 16, 2011, the plaintiff filed an Emergency Petition for Temporary Prohibitive Injunction Without Notice to Defendants in the Circuit Court of Kanawha County, Case No. 11-C-998, in which she named "Charleston City Council, et al.," as

respondents. (ECF No. 43-6.) The purpose of this Petition was to attempt to prevent the respondents from swearing into office those who had won in the municipal election. (*Id.*)

On June 21, 2011, the Hon. James C. Stucky, Circuit Judge, conducted a hearing in Case Nos. 11-MISC-282 and 11-C-998. (ECF No. 43-7.) The plaintiff appeared *pro se*. The City of Charleston, the Charleston City Council, the Charleston City Clerk, and Mayor Danny Jones appeared by counsel. (*Id.*) The defendants argued that the Circuit Court of Kanawha County lacked subject matter jurisdiction because the Charleston City Council is the judge of any contest of a municipal election, citing *Evans v. Charles,* 56 S.E.2d 880 (W. Va. 1949) (the municipal council has original and exclusive jurisdiction to hear and decide contested elections involving the selection of municipal officers). (*Id.*, at 6-7.) On June 30, 2011, Judge Stucky entered a Final Order Dismissing Petition for Default Judgment and Injunctive Relief in both 11-MISC-282 and 11-C-998, concluding that the Circuit Court of Kanawha County lacked subject matter jurisdiction and that the plaintiff had failed to state any cause of action against Vera McCormick, the Kanawha County Clerk. (ECF No. 43-8.)

On June 24, 2011, the Charleston City Clerk, James M. Reishman, issued a letter to the plaintiff which set forth the procedures for the election contest, to be held on July 21, 2011, with a preliminary hearing on July 18, 2011. (ECF No. 43-9.)

On July 14, 2011, the plaintiff filed a Complaint to Disqualify the Charleston City Council from Administering the Procedures . . . Judging the May 17, 2011 Election Contest, in the Circuit Court of Kanawha County, Case No. 11-C-1171. (ECF No. 43-10.) The case was assigned to the Hon. Tod J. Kaufman who, on July 15, 2011, adopted Judge Stucky's conclusions of law and dismissed the case. (ECF No. 43-11.)

On July 18, 2011, the Charleston City Council was in session and heard the plaintiff. She declared that "City Council cannot hear this matter. No contestee can. The law says you have jurisdiction, but it also provides that if you are a member of that whose election was contested, which I did the whole election, you cannot be the judge." (ECF No. 43-12, at 5.) She stated that she would not participate and left. (*Id.*)

On July 20, 2011, the plaintiff filed a Petition for Writ of Prohibition in the Supreme Court of Appeals of West Virginia, Case No. 11-1070, naming the Charleston City Council as the respondent. (ECF No. 43-14.) Relying on West Virginia Code § 3-7-6, which applies to county and municipal elections, the plaintiff argued that she is contesting the entirety of the municipal election; thus the City Council, all of whom were elected, by operation of law, "may not participate in judging the election, qualifications and returns." (*Id.*) The petition was refused by Order dated September 8, 2011. (ECF No. 43-15.)

On July 21, 2012, the City Council held the Election Contest hearing. (ECF No. 43-13.) The plaintiff did not appear; Mayor Jones was represented by counsel; Councilman Lane presided. (*Id.*, at 3.) Kanawha County Clerk Vera McCormick and City Council Clerk Erin Vriendt testified. Ms. McCormick stated that each of the plaintiff's allegations was untrue and that there were no irregularities in connection with the election. (*Id.*, at 7-11.) Ms. Vriendt sponsored ten exhibits which were admitted into evidence and testified that there were no election irregularities. (*Id.*, at 11-12.) City Council, by roll call vote, denied the plaintiff's election contest based on the evidence presented to Council and the lack of evidence presented by the plaintiff. (*Id.*, at 12-14.) Council further denied the relief sought by the plaintiff that the election be declared invalid or that she be declared the winner of the mayoral race. (*Id.*, at 15-16.)

On August 15, 2011, Charleston City Council issued its "Final Order on Election Contest," which contains the procedural history, findings, conclusions of law, and disposition of motions and the contest itself. (ECF No. 43-17.)

On June 8, 2012, the plaintiff filed this action.

### Issues Presented

The Charleston defendants raise six grounds for dismissal of this action:

I. Failure to state a claim upon which relief can be granted;

II. Expiration of the one-year statute of limitations;

III. *Res Judicata*;

IV. Collateral estoppel;

V. Rooker-Feldman doctrine; and

VI. Qualified immunity.

### Specific Allegations Against the Charleston Defendants

The first count of the Amended Complaint, based on 42 U.S.C. § 1983, alleges that City Council voted to hold its elections according to the West Virginia Code, Chapter 3, to use Kanawha County's voting system, to purchase voting supplies, to pay poll workers and to pay attorneys. (ECF No. 22, at 17-18.) The plaintiff further alleges that City Council concealed from her that the M100 voting machines would not be used. (*Id.*, at 18.) She charges City Clerk Reishman with failing to implement "the West Virginia Election law minimums," thereby causing the dilution of the vote and inequality. (*Id.*) The plaintiff alleges that City Council and Reishman suppressed the plaintiff's vote and prevented her from achieving a successful election contest. (*Id.*) The plaintiff alleges that her First Amendment right of freedom of speech was violated by City Council and the City when they adopted the West Virginia Code which did not allow

7

for Independents to file timely as candidates in a municipal election. (*Id.*, at 20.) She states that defendant Paul Ellis "failed to challenge the City of Charleston for this violation of the plaintiff's right." (*Id.*, at 21.) She claims that City Council, Reishman and Ellis deprived her of life, liberty or property without due process of law when they did not inform her of changes in the electoral process concerning the filing of Independents and the counting of votes. (*Id.*, at 21.) Ms. Thompson states that her Nineteenth Amendment rights were violated because she is a female voter, and her Fifteenth Amendment rights were violated because she is a black voter. (*Id.*, at 21-22.)

The second count of the Amended Complaint is based on 42 U.S.C. § 1985 and alleges a conspiracy among all defendants to interfere with her civil rights, particularly her right to due process and equal protection of the law under various constitutional amendments as a qualified voter, female voter, and black voter. (*Id.*, at 22-23.)

The third count of the Amended Complaint is based on 42 U.S.C. § 1986 and alleges that the defendants knew of the unlawful conduct and failed to challenge or stop the violations of law. (*Id.*, at 23-24.)

The fourth count of the Amended Complaint is based on 42 U.S.C. § 1981. With respect to the Charleston defendants, the plaintiff alleges that she has had disputes with City Council regarding low-income housing and that these defendants have shown gender and racial animosity toward the plaintiff. (*Id.*, at 25-26.) She asserts that these defendants have violated their oath of office and their bonds by failing to perform the duties of their offices. (*Id.*, at 27-28.)

The plaintiff seeks the following relief: an award of fees and expenses in the approximate amount of $46,000, issuance of an injunction to stop these defendants from violating the election laws, a declaratory judgment, an award of compensatory

8

damages of $10 million, and an award of punitive damages against each defendant in the amount of $1 million. (*Id.*, at 30-31.)

### Failure to State a Claim

The Charleston defendants assert that the plaintiff's Amended Complaint do not contain sufficient facts to survive a motion to dismiss under the pleading standards set forth by the Supreme Court of the United States in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). (ECF No. 44, at 5-6.) They note that the irregularities alleged by the plaintiff (filing period for Independents, non-use of poll books, non-use of M100 machines, and choice of precincts for the canvas) are not plausibly linked to her gender or race. (*Id.*, at 7.) Citing to *Hutchinson v. Miller*, 797 f.2d 1279, 1280 (4th Cir. 1986), the Charleston defendants assert that federal courts are not available for awards of damages to defeated candidates and that requests for equitable intervention into factual disputes over the conduct of elections are unavailing save in rare and extraordinary circumstances. (*Id.*, at 9-12.) They further contend that the plaintiff's allegations are insufficient to establish a conspiracy and thus her claims under both §§ 1985 and 1986 must fail. (*Id.*, at 12-13.)

The plaintiff asserts her reliance on the facts she alleges in the Amended Complaint. (ECF No. 68, at 1.) She clarifies that her § 1983 claim is "not premised on discrimination." (*Id.*, at 6.) The plaintiff contends that her Amended Complaint has "three claims for Constitutional deprivations":

> The plaintiff's own First Amendment-Fourteenth right(s); as a citizen, she was denied her own personal freedom of speech, her right to Equal Protection to access the ballot/associate and the substantial due process notice of electoral process changes.
> The Fourteenth Amendment right; as a citizen-voter, voters were denied the equal protection to have the vote counted-properly, and the substantial procedural due process, notification of electoral process changes. The

9

> plaintiff's personal Fourteenth right under the substantive due process, as a candidate-to-be notified of electoral process changes; and
> The plaintiff was denied her Fifth Amendment right, of the due process (substantive) notification of the deprivation of her personal property interest.

(*Id.*, at 6-7.) She avers that she need not state allegations of racial animus. (*Id.*, at 15.)

The Charleston defendants' reply relies on *Hutchinson, Twombly* and *Iqbal*. (ECF No. 74, at 3-10.)

The undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Amended Complaint fails to state a claim upon which relief can be granted because it falls squarely within the holding of *Hutchinson*, in which the Fourth Circuit ruled that federal courts should "refrain from considering the particulars of a disputed election." 797 F.2d at 1285.

> To do otherwise would be to intrude on the role of the states and the Congress, to raise the possibility of inconsistent judgments concerning elections, to erode the finality of results, to give candidates incentives to bypass the procedures already established, to involve federal courts in the details of state-run elections, and to constitute the jury as well as the electorate as an arbiter of political outcomes.

*Id.*

### Second and Third Counts of Amended Complaint

The second count is based on 42 U.S.C. § 1985; the third count is based on 42 U.S.C. § 1986. The two statutes are intertwined.

> To set forth a violation of 1986, a plaintiff must first prove a violation of 1985, its predicate, which prohibits discriminatory conspiracies. A plaintiff need not prove that a 1986 defendant had the discriminatory intent requirement of 1985. Rather, the plaintiff need only demonstrate: (1) the defendant had actual knowledge of the 1985 conspiracy; (2) the defendant had the power to prevent or aid in preventing the commission of the 1985 violation; (3) the defendant neglected or refused to prevent the 1985 conspiracy; and (4) a wrongful act was committed by the conspirators. The defendant is liable for all damages that he or she could have prevented with reasonable diligence.

> Knowledge of rumors may satisfy the first element. A showing of negligence suffices to prove a violation of the section. To escape liability, a defendant need only exercise reasonable diligence to prevent commission of the 1985 conspiracy.
>
> Thus a violation of 1986 turns on the potential defendant's ability to prevent execution of a class-based conspiracy under 1985. * * *
>
> The standards for liability under 1985 are quite stringent. * * *
>
> Thus, the elements of a violation under [subsection three][3] are as follows: (1) the defendants did "conspire or go in disguise on the highway or on the premises of another"; (2) the defendants acted "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws"; and (3) one or more conspirators did or caused to be done "any act in furtherance of the object of [the] conspiracy," whereby another was (a) "injured in his person or property" or (b) "deprived of having and exercising any right or privilege of a citizen of the United States." * * *
>
> In summary, a 1986 claim is dependent upon establishing an underlying conspiracy claim under 1985. Section 1986 then acts to reinforce and extend 1985 by permitting claims against defendants not implicated under 1985. That is, a 1985 defendant must be a conspirator and must have joined in the illegal conspiracy by at least manifesting his or her agreement with the conspiratorial plan. While evidence of mere encouragement of the conspiracy rather than direct participation may suffice to establish coconspirator liability, the existence of some evidence of an active link between this defendant and the conspiracy is necessary. Section 1986, on the other hand, requires no such direct connection to the conspiratorial agreement. It attaches liability for culpable inaction. It renders responsible those whose knowledge places them closest to the underlying conspiracy regardless of whether or not they acted affirmatively.

Linda K. Fisher, *Anatomy of an Affirmative Duty to Protect: 42 U.S.C. Section 1986*, 56 Wash. & Lee L. Rev. 461, 474-79 (1999).

Statute of Limitations - § 1986

Section 1986 specifies that "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has

---

[3] The court assumes that the plaintiff intended her cause of action to be based on § 1985(3); subsections (1) and (2) are inapplicable.

accrued." It appears that the plaintiff is alleging that the Charleston defendants neglected to prevent the alleged violation of the plaintiff's civil rights from December, 2010 through the completion of the proceedings related to the election contest. The election contest was conducted by City Council on July 21, 2011, and the Final Order was entered August 18, 2011. The plaintiff filed her original Complaint on June 8, 2012.

The Charleston defendants argue that "the allegedly actionable conduct ceased, at the very latest, when the official 'winner' of the election was introduced and adopted by the Charleston City Council on June 6, 2011." (ECF No. 44, at 15.) The plaintiff responds that she contends that the Charleston defendants neglect continued to the entry of the Final Order on August 18, 2011. (ECF No. 68, at 20.)

The undersigned proposes that the presiding District Judge **FIND** that the plaintiff's cause of action for a violation of § 1986 is not barred by the one-year statute of limitations because the City Council was engaged in taking action concerning the plaintiff's election contest through August 18, 2011.

Alleged Failure to State a Claim Upon Which Relief Can Be Granted - §§ 1985 and 1986

In order to state a claim under § 1986, the plaintiff must first state a claim upon which relief can be granted under § 1985. The elements of a § 1985 claim are set forth above.

The Charleston defendants assert that the plaintiff's allegations do not state a claim because she has failed to allege any communications or asserted activity in support of a conspiracy, and she has failed to allege facts showing racial animus. (ECF No. 44, at 12-13.) The plaintiff responds that her Amended Complaint does not have to state facts of racial animus. (ECF No. 68, at 15.) She contends that the Charleston defendants' "election law violations are a further factual corroboration of [their]

conspiracy to commit fraud and in doing so did intentionally deprive the plaintiff of her constitutional rights under the law, causing her personal injuries." (*Id.*, at 17.)

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints. However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556.
> * * *
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

The undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Amended Complaint fails to state a claim under §§ 1985 and 1986. The Amended Complaint is replete with allegations of the existence of a conspiracy to violate her civil rights, without any evidence that there was an unlawful agreement. Her conclusions are not entitled to the assumption of truth, particularly in light of the sworn testimony of Ms. McCormick that election laws were not violated. The fact that Charleston officials ultimately agreed on a particular course of action with respect to the municipal election does not constitute proof of their individual or collective participation in a conspiracy.

## Res Judicata and Collateral Estoppel

The Charleston defendants contend that the plaintiff's three suits in the Circuit Court of Kanawha County, election contest before City Council, and petition filed with the Supreme Court of Appeals of West Virginia constitute final adjudications on the merits by courts having jurisdiction of the proceedings, which involved the same parties, and the same issues that were or could have been resolved. (ECF No. 44, at 15-21.) They invoke both *res judicata* and collateral estoppel. (*Id.* at 21-22.)

It is apparent that the Circuit Court actions were dismissed for lack of subject matter jurisdiction and thus do not constitute prior proceedings eligible for *res judicata*. The petition filed in the Supreme Court of Appeals of West Virginia concerned the qualification of City Council to sit as the arbiter of the plaintiff's election contest; that issue is not raised in this action. The City Council's Final Order deciding the election contest listed only Mayor Danny Jones as the respondent/contestee, not City Council. Mayor Jones is not a party defendant in this action. The undersigned proposes that the

presiding District Judge **FIND** that this action is not barred by *res judicata* or collateral estoppel.

### Other Defenses

In light of the proposed findings and recommendation based on *Hutchinson*, it appears to be unnecessary to address the defendants' remaining grounds for dismissal.

### Recommendation

It is respectfully **RECOMMENDED** that the Motion to Dismiss filed by the Charleston defendants (City of Charleston, City Council, City Clerk Reishman and City Attorney Ellis) be granted for the reason that the plaintiff's Amended Complaint fails to state a claim upon which relief can be granted.

### Notice

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S.

140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Johnston.

    The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy to the plaintiff, and to transmit it to counsel of record.

<u>December 7 , 2012</u>

*[signature: Mary E. Stanley]*
Mary E. Stanley
United States Magistrate Judge