IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JANET L. THOMPSON,

          Plaintiff,

v.                        CIVIL ACTION NO.   2:12-cv-01945

THE KANAWHA COUNTY COMMISSION, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

On Pending before the Court are two motions to dismiss. The first was filed by Defendants Tim Leach and Natalie Tenant. [ECF 26.] The second was filed by Defendants Rod Blackstone; the City of Charleston, West Virginia; the City of Charleston, West Virginia, City Council Members; Paul Ellis; and James M. Reishman ("the Charleston Defendants")[1] [ECF 43.]

Following the filing of Plaintiff's original *pro se* Complaint, on June 8, 2012, this case was referred to Mary E. Stanley, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendation for disposition ("PF&R"), pursuant to 28 U.S.C. § 636(b)(1)(B).

For the reasons that follow, the Court **OVERRULES** Plaintiff's objections, **ADOPTS** the PF&Rs and **GRANTS** both motions.

---

[1] Plaintiff originally named twenty-two known defendants. Defendant Rod Blackstone, like sixteen other Defendants, has been dismissed from this case.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts concerning this matter are accurately and more fully set forth in the PF&Rs and need not be fully repeated here. In brief, this matter arises from events surrounding the 2011 mayoral election in the City of Charleston, West Virginia. According to Plaintiff's Amended Complaint, Plaintiff wanted to file as an Independent candidate for mayor, but in December 2011 the Elections Division of the West Virginia Secretary of State's Office advised Plaintiff that she was ineligible to file as an Independent because the deadline for Independent filing had passed. The filing period for Democratic candidates (and presumably Republican candidates) had not lapsed. Consequently, Plaintiff registered as a Democrat and filed for her candidacy for the office of Mayor. Plaintiff filed a formal complaint with the Elections Division of the West Virginia Secretary of State's Office attacking the disparate filing deadlines for Independents and other political parties. Sometime thereafter the Charleston City Council extended the deadline for Independent filings, presumably bringing it into alignment with other political parties' filing deadlines.[2] Notwithstanding the extension, Plaintiff remained a Democratic candidate for mayor.

Plaintiff lost her bid for mayor in the May 2011 general election. In early June 2011, Plaintiff filed an election contest with the City of Charleston and the Kanawha County Clerk's Office challenging the election results based on a variety of alleged election law violations. Plaintiff's Amended Complaint states that Plaintiff filed an unsuccessful writ of prohibition in the Supreme Court of Appeals of West Virginia. She also filed suits in Kanawha County Circuit Court, but the cases were dismissed for lack of jurisdiction. Thereafter, the City of Charleston

---

2  Based on Plaintiff's filings and the transcript of the July 20, 2012 status conference held by Magistrate Judge Stanley, it is apparent that Plaintiff is an intelligent and determined litigant. Nonetheless, Plaintiff's Amended Complaint and her other filings, at times, are challenging to fully comprehend. Magistrate Judge Stanley has commendably managed this unwieldy and difficult case. As in all *pro se* cases, the Court will construe Plaintiff's pleadings liberally and afford her all reasonable factual inferences. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

2

held two hearings concerning Plaintiff's challenge to the election results, but Plaintiff advised the council members that she would not attend a hearing where "the foxes [Charleston City Council members] were the judges." (ECF 22 at 11.) Ultimately, the City Council dismissed Plaintiff's contest after Plaintiff failed to appear and after receiving evidence and testimony from former Defendant Vera McCormick, the Kanawha County Clerk.

On June 8, 2012, Plaintiff filed her *in forma pauperis*, *pro se* Complaint in this Court and the case was referred to Magistrate Judge Stanley. Following a status conference, during which Magistrate Judge Stanley advised Plaintiff of various pleading deficiencies in her Complaint, Plaintiff filed her Amended Complaint. (*See* ECF 14 & 22.)[3]

Plaintiff's Amended Complaint contains 110 prefatory paragraphs detailing Plaintiff's factual allegations concerning the 2011 election and its aftermath. Thereafter, Plaintiff alleges four specific claims: "Count I—Violations of 42 U.S.C. Section 1983 Deprivation of Civil Rights under Color of Law"; Count II—Violations of 42 U.S.C. [§] 1985 Conspiracy to Interfere with Civil Rights; "Count III—Volation [sic] of 42 U.S.C. [§] 1986—Knowing and Failure to Prevent Violations [so styled]"; "Count IV—Violations of 42 U.S.C. § 1981 Equal Rights under the Law". (ECF 22.) In her prayer for relief, Plaintiff requests $46,000 for her expenses; "general damages" of $10.0 million; punitive damages of $1.0 million; fees and costs; and such other relief "as may be warranted or as is just and proper." (*Id.*, at 31.) Elsewhere in the Amended Complaint, Plaintiff requests an injunction seeking to restrain certain Defendants from "violating the West Virginia Election Laws" and a declaratory judgment as the Court "sees proper and applicable." (*Id.*, at 30.)

---

3  On August 21, 2012, Plaintiff filed a "Notice/Motion to supplement pleadings". (ECF 51.) In this document Plaintiff corrected certain factual averments she made in her Amended Complaint.

3

Over the following months, the parties filed numerous motions including the pending motions to dismiss filed by Defendants Tim Leach and Natalie Tenant, and the Charleston Defendants. Attached to the Charleston Defendants' motion to dismiss were seventeen exhibits, which largely consist of various public records, court orders and other documents filed in the course of Plaintiff's state court litigation and election contest, transcripts, and other documents whose authenticity do not appear to be in contest. Defendants Natalie Tenant and Timothy Leach joined the Charleston Defendants' motion to dismiss. (ECF 50.)

By Order dated July 31, 2012, Magistrate Judge Stanley, in consideration of Plaintiff's *pro se* status, provided detailed notice to Plaintiff advising her of her "right and obligation" to file a responses to each of the defendants' various motions and to submit affidavits and other factual materials supporting her positions. (ECF 49 at 1-2.) Magistrate Judge Stanley's Order cited Rule 56 of the Federal Rules of Civil Procedure and warned Plaintiff that the factual statements contained in the Defendants' exhibits would be accepted as true unless Plaintiff established facts showing "the existence of a genuine or actual dispute of material fact for trial." (ECF 49 at 2.) Plaintiff was further warned that her failure to respond to the Defendants' motions "may result in entry of summary judgment denying the relief sought in the Amended Complaint and dismissing some or all of the case." (ECF 49 at 2.) On September 14, 2012, Plaintiff filed her responses to the motions and included various supporting materials as an exhibit. (ECF 61, 68.) Like the Defendants' motion to dismiss, Plaintiff's supporting exhibits largely consist of documents that do not pose controversial authenticity issues (*e.g.* West Virginia state laws, public records, correspondence to Plaintiff from the West Virginia Secretary of State's Office, a transcripts). On September 24, 2012, the Charleston Defendants filed their reply. (ECF 74.)

4

Magistrate Judge Stanley disposed of most of the pre-trial motions by Order entered on November 20, 2012. (ECF 77.) The two dispositive motions now under the Court's consideration, however, were not resolved by that Order. On December 7, 2012, Magistrate Judge Stanley recommended in two separate PF&Rs that the Court grant both motions to dismiss on the basis that the Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted. (ECF 83 & 84.)

Objections to the PF&Rs in this case were initially due on December 24, 2012, but the deadlines were later extended to January 14, 2013. Plaintiff filed timely objections to the PF&Rs on January 14, 2013.[4] (ECF 87, 88.)

The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Failure to file timely objections constitutes a waiver of de novo review and the Petitioner's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); *see also Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

---

4 Plaintiff filed her objections with the Clerk on January 14, 2013, and she also hand-delivered to the Court's chambers a courtesy copy of the objections. The filed version, however, is missing pages three and four (ECF 87); the chambers copy contains all pages (ECF 88). Because the Court considers the omission of pages three and four from the filed copy to be inadvertent, the Court docketed the chambers courtesy copy so that the record would reflect the entirety of Plaintiff's objections. Reference to the objections will be to ECF 87 and 88.

*II. DISCUSSION*

*A.     Legal Standards*

As noted earlier, the Court is mindful of the well-settled principle that *pro se* filings must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97 (1976)); *De'lonta v. Johnson*, ___ F.3d ___, 2013 WL 310350 at *3 (4th Cir. Jan. 28, 2013) (same). However, generous construction of *pro se* pleadings is not without limits. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (observing that "[d]istrict judges are not mind readers"). District courts are not required to "conjure up questions never squarely presented." *Id.*, at 1278.

As with parties who are represented by counsel, a court should not dismiss an action for failure to state a claim " 'unless after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.' " *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (quoting *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)). However, the complaint must contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

The Court may consider facts derived from sources beyond the four corners of the complaint, including documents attached to the complaint and to the motion to dismiss, "so long as they are integral to the complaint and authentic." *Philips v. Pitt Co. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Blankenship v. Manchin*, 471 F.3d 523, 526 n. 1 (4th Cir. 2006)). "[A] court may consider official public records, documents central to plaintiff's claim, and documents

sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x 395, 396-97 (4th Cir. 2006). However, "[i]f matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." An *in forma pauperis* claim having no arguable basis in law or fact may be dismissed as frivolous and for failure to state a claim upon which relief may be granted. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); 28 U.S.C. § 1915(e)(2)(B).

  *B.*  *Analysis*

  Liberally construing Plaintiff's twenty-two-page objections, the Court has isolated nine objections. The Court has carefully reviewed each of these objections and finds that all of the objections are non-specific, general, conclusory, incoherent, or do not otherwise present a meritorious basis for denying the pending motions to dismiss. For example, Plaintiff states that she only requested a declaratory judgment that the Court saw applicable and proper whereas the PF&R incorrectly states that Plaintiff requested a declaratory judgment that Defendants violated West Virginia election laws and her civil rights. (ECF 88 at 2–3.) While Plaintiff is correct on this point, Magistrate Judge Stanley's construction of Plaintiff's request was a fair interpretation in the context of the Amended Complaint as a whole. More importantly, the characterization is of no legal consequence. Plaintiff also faults the PF&Rs for ignoring the consequences of the alleged election violations and directs the Court's attention to the Amended Complaint. (*Id.*, at 5–6.) Plaintiff further complains that the PF&Rs improperly tracks the procedural history

7

outlined by Defendant's exhibits and improperly characterizes certain facts. (*Id.*, at 6–7.) These objections all lack merit.

One of Plaintiff's objections—and the one to which Plaintiff devotes the most effort—merits discussion. Magistrate Judge Stanley recommends that the motions to dismiss be granted because the Amended Complaint fails to state a claim on which relief may be granted. Plaintiff challenges this recommendation. More specifically, Plaintiff, among other things, faults Magistrate Judge Stanley because she "supplies no reasoning as to how" Plaintiff's complaint is the same as the complaint at issue in *Hutchinson v. Miller*, 797 F.2d 1279 (4th Cir. 1986). Plaintiff also argues at length that Magistrate Judge Stanley improperly and in contradiction to her July 31, 2012, Order disposed of the pending motions using standards applicable to Federal Rule of Civil Procedure 12(b)(1) & (6) and not the summary judgment standards under Federal Rule of Civil Procedure 56. (ECF 7-15.)

Magistrate Judge Stanley correctly determined that Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted. To begin, Plaintiff is correct that Magistrate Stanley indicated in her July 31, 2012, that Defendants' motions to dismiss would be considered under summary judgment standards. However, ultimately in her PF&Rs, Magistrate Judge Stanley did not appear to consider materials outside of the pleadings in making her determination that *Hutchinson* bars Plaintiff's suit; rather Magistrate Judge Stanley recited the parties' arguments, which, in turn, rely on facts alleged in Plaintiff's Amended Complaint and did not refer to facts alleged in the exhibits attached with the motions to dismiss submissions.[5] Thus, Magistrate Stanley did not err by not applying summary judgment standards.

---

5  The Court observes that many, if not all, of the exhibits attached to the parties' filings in connection with the motions to dismiss are official public records, documents central to plaintiff's claims, documents sufficiently referred

8

Even if the Court assumes that Plaintiff had plausibly stated the elements of each of her four claims, it is well-settled that federal courts provide no refuge for losing political candidates who seek damages for garden variety irregularities that occur in the course of public elections. *Hutchinson v. Miller*, 797 F.2d at 1282-86. The plaintiffs in *Hutchinson* were three losing candidates for federal, state, and local offices. *Id.*, at 1280. They filed suit seeking to recover approximately $9.0 million in damages under various theories of liability, including 42 U.S.C. § 1983. In affirming the district court's dismissal of the suit, the Fourth Circuit held: "We conclude that federal courts are not available for awards of damages to defeated candidates. Requests for equitable intervention into factual disputes over the conduct of elections, which raise many of the same concerns as those presented by this damages action, are unavailing save in rare and extraordinary circumstances." *Id.*, at 1280. The court acknowledged the "significant duty of the federal courts" to preserve constitutional rights in the electoral process. *Id.*, at 1283. That duty, however, concerns cases involving "the general application of law and procedures, not the particulars of election disputes." *Id.* The court offered examples of cases where the federal courts may properly intercede, namely, cases involving class- and race-based restrictions on the right to vote (or that so burden the exercise of political rights) and cases involving unlawful redistricting schemes. *Id.* In contrast are cases involving "garden variety election irregularities." *Id.* The federal courts decline to interfere in this second category of cases "because of the constitutional recognition that 'states are primarily responsible for their own elections,' and that alternative remedies are adequate to guarantee the integrity of the democratic process." *Id.* (citations omitted).

---

to in the Amended Complaint, and documents whose authenticity is either not contested or cannot reasonably be contested.

9

> As this Court recently noted in a case involving a § 1983 claim:
>
> The Fourth Circuit in *Hutchinson* provided many powerful reasons against federal courts' involvement with electoral disputes. For instance, the state has provided that contests for county office are to be resolved by county courts. [*Hutchinson v. Miller*], 797 F.2d at 1284 (citing W. Va. Code § 3–7–6). Furthermore, West Virginia courts have "election mandamus" powers by which they may "compel any [election] officer . . . to do and perform legally any duty [ ] required of him." *Id.* (citing W. Va. Code § 3–1–45). The state "has enacted legislation designed to control "[p]olitical campaign contributions, receipts and expenditures of money, advertising, influence and control of employees, and other economic, political and social control factors incident to ... elections." *Id.* at 1285 (citing W. Va. Code § 3–8–1). There are criminal sanctions available under West Virginia law "for those found to have filed false returns, tampered with ballots, bought or sold votes, and the like." *Id.* (citing W. Va. Code §§ 3–9–1 to 3–9–24). Thus, there are state-created avenues for dealing with the conduct at issue in terms of remedies for the wronged and punishment for the wrongdoers.
>
> If the federal courts were available to hear all state election disputes under § 1983 based on a plaintiff's generic prayer for equitable relief in its complaint, all of the concerns in *Hutchinson* would still exist without any tangible change in the calculus. There is still the potential intrusion on the states' procedures and the accompanying federalism concerns, the possibility of inconsistent judgments concerning elections, the erosion of the finality of election results, and the danger that a cause of action in federal court would provide incentive to bypass established state procedures. *Id.* But without class-based discrimination in the election process or overly restrictive state election laws, or an allegation on par with these constitutional concerns, the benefit of a federal court stepping in to moderate election disputes is far outweighed by the dangers to our very political system. *See id.* at 1280 (providing examples of when federal courts are available to guard the electoral process). As *Hutchinson* recognized, "[t]he legitimacy of democratic politics would be compromised if the results of elections were regularly to be rehashed in federal court." *Id.*

*Brumfield v. McCann,* No. 2:12–cv–01481, 2013 WL 943807 at *3–4 (S.D. W. Va. March 11, 2013) (Goodwin, J.).

As in *Hutchinson* and *Brumfield*, the Plaintiff here seeks monetary relief, namely, $10.0 million in "general damages" and another $1.0 million in punitive damages, in addition to costs and fees. Although elsewhere in her complaint she seeks equitable relief insofar as she requests a

10

"Declaratory Judgment, as the Honorable Court sees proper and applicable" (ECF 22 at 30) and asks for an injunction ordering certain Defendants to "stop violating the West Virginia Election Laws", such vague requests for equitable relief do not establish that this case presents the "rare and extraordinary" circumstances that fall within the exception to *Hutchinson's* general rule. Plaintiff's Amended Complaint alleges garden variety election violations including disparate candidacy filing deadlines for Independents and other political parties; failure by various public officials to authenticate signatures of voters who voted in the early voting process; failure to utilize appropriate voting machines; irregularities in election canvass process; and procedural irregularities in the course of Plaintiff's election contest. As alleged and generously construed by the Court, none of these allegations presents circumstances warranting departure from *Hutchinson'*s general rule.

In light of the foregoing, the Court **ADOPTS** the PF&Rs based on: (1) Magistrate Judge Stanley's finding that the Amended Complaint fails to state a claim upon which relief can be granted because it falls squarely within the holding of *Hutchinson*; and (2) the recommendation that the Court grant the motions to dismiss. In light of the Court's foregoing analysis it is unnecessary to rule on other findings and recommendations contained in the PFRs. Defendants' motions to dismiss are, thus, **GRANTED.**

### III. CONCLUSION

Accordingly, for the foregoing reasons the Court **OVERRULES** Plaintiff's objections (ECF 87, 88), **ADOPTS** the PF&Rs (83, 84), **GRANTS** the Charleston Defendants' motion to dismiss [ECF 43] and Defendants Natalie Tenant's and Tim Leach's motion to dismiss [ECF 26],

11

**DISMISSES** Plaintiff's Amended Complaint (ECF 22), and **DIRECTS** the Clerk to remove this case from the Court's Docket.

    **IT IS SO ORDERED**.

    The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                  ENTER:      March 25, 2013

                    THOMAS E. JOHNSTON
                    UNITED STATES DISTRICT JUDGE